THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

GREAT AMERICAN ALLIANCE INSURANCE
CO.,

        Plaintiff,

     v.

No. 3:18-cv-00908-HZ

**AMENDED
OPINION AND ORDER**

SIR COLUMBIA KNOLL ASSOCIATES
LIMITED PARTNERSHIP,


        Defendant.
_____
SIR COLUMBIA KNOLL ASSOCIATES
LIMITED PARTNERSHIP,

      Third-Party Plaintiff,

     v.

PHILADELPHIA INDEMNITY INSURANCE CO.,

      Third-Party Defendant.
_____

**HERNANDEZ, Judge:**

In this action, the parties dispute insurance coverage for water-damaged apartment buildings. The parties now move for summary judgment on whether Oregon or Washington law applies. The owner of the apartment buildings, Defendant and Third-Party Plaintiff SIR Columbia Knoll Associates Limited Partnership (Columbia Knoll), contends that Washington law applies. The two insurers, Plaintiff Great American Alliance Insurance Co. (Great American), and Third-Party Defendant Philadelphia Indemnity Insurance Co. (Philadelphia) (collectively the Insurers), contend that Oregon law applies.

I conclude that Oregon law applies. I therefore dismiss Columbia Knoll's claims for violations of the Washington Consumer Protection Act and for tortious breach of the implied covenant of good faith and fair dealing because Oregon does not recognize such claims for alleged breaches of an insurance policy.

## BACKGROUND

The facts relevant to the choice of law analysis are largely undisputed. Columbia Knoll is an Oregon limited partnership domiciled in Oregon. Columbia Knoll owns the apartment buildings at issue, which are adjacent complexes in northeast Portland: The Terrace at Columbia Knoll, which contains 118 income-restricted apartments in nine separate buildings, and The Heights at Columbia Knoll Senior Residence, which contains 208 income-restricted apartments in one four-story building. *See* Great Am.'s Suppl. Br. 3 (aerial photo of the Property), ECF No. 60.

One of Columbia Knoll's two general partners, Columbia Grotto Partners, LLC (Columbia Grotto), is an Oregon limited liability company whose principal place of business is

Bellevue, Washington.  Miller Suppl. Decl. ¶ 2, ECF No. 54.  Shelter Investment Resources,

LLC (Shelter Investment) "is the 99% member" of Columbia Grotto.  *Id.*  Columbia Knoll

submits declarations from Mark Miller, who states that he is "a principal in Shelter Investment,"

and is "primarily responsible for executive-level decisions regarding the operations of Columbia

Knoll.  Day-to-day operations at Columbia Knoll are handled by on-site property managers.

Executive-level decisions, however, including decisions regarding major construction or repair

projects, are made by me and my business partners in Bellevue, Washington."  *Id.* ¶ 3.

Great American is domiciled in Ohio.  Philadelphia is domiciled in Pennsylvania.

Between 2011 and 2017, the Insurers issued property insurance policies to Evergreen Portfolio,

LLLP[1], which is based in Bellevue, Washington.  Evergreen Portfolio is not a party to this

action.

Great American issued policies to Evergreen Portfolio that were effective from June 30,

2011 until June 30, 2014.[2]  Philadelphia issued policies to Evergreen Portfolio that were

effective from June 30, 2014 to June 20, 2019.  The policies were negotiated and purchased

through an insurance brokerage based in the State of Washington.  Columbia Knoll's Resp. 4,

ECF No. 40.  In addition to the Property at issue, the Insurers' policies covered other properties

---

[1] LLLP is an abbreviation for Limited Liability Limited Partnership.

[2] After the parties had briefed the choice of law issues, Great American discovered another policy it issued to Evergreen Portfolio, insuring only The Terrace at Columbia Knoll, effective from February 9, 2011 to February 9, 2012 (the Terrace Policy).  Houser (Corrected) Decl. ¶ 3, ECF No. 62.  Great American now contends that the Terrace Policy is relevant to the choice of law issues.  Great Am.'s Suppl. Br. 4.  Columbia Knoll responds that it "will not be submitting or pursuing a claim under [the Terrace Policy] in this litigation" because "[t]here are more than adequate policy limits" in the other policies issued by Great American.  Miller Decl. in Resp. ¶ 4, ECF No. 64.  I do not consider the Terrace Policy in my choice of law analysis because the parties' previously filed briefs and exhibits are sufficient.  At this time, I do not rule on whether the Terrace Policy is relevant to the parties' claims.

in Oregon, as well as properties in Washington, Arizona, Texas, Utah, and other states.  *See* Houser Decl., Exs. A, C, & E (Great American policies); Kirby Decl., Exs. A, B, C, D, & E, ECF Nos. 31-1, 31-2, 31-3, 31-4, & 31.5 (Philadelphia policies).  The number of properties covered by the Insurers' policies varied year to year from about 145 to 179 properties.  More than half of the insured properties were in Washington.  Columbia Knoll's Resp. 4.

In September 2016, Columbia Knoll brought a lawsuit in Multnomah County Circuit Court against a general contractor and two subcontractors, alleging that the defendants' faulty workmanship on the Property and violations of Oregon building codes had allowed water intrusion, causing extensive damage to the buildings.  Houser Decl., Ex. I (copy of complaint in *SIR Columbia Knoll Limited Partnership v. Synergy Constr.*, No. 16CV28622 (Multnomah Cty. Cir. Ct.)).  In its Multnomah County complaint, Columbia Knoll sought $8 million in damages.[3]

In October 2016, Columbia Knoll reported the loss to its insurance broker, which then reported the loss to Great American.  The loss notice described the loss as "'recently discovered water damage at 2 properties.'"  Great Am.'s Compl. ¶ 8, ECF No. 1.

After receiving Columbia Knoll's loss notice, Great American's senior claim technical director, Donna Szydlo, who was based in Illinois, assigned an independent adjuster to investigate the claim and an engineer to inspect the Property.  After visiting the Property several times, the adjuster and engineer reported their findings to Szydlo.  Szydlo "made the ultimate decision to deny coverage of Columbia Knoll's claim."  Szydlo Decl. ¶ 5, ECF No. 49.

In April 2018, Columbia Knoll sent Great American a proof of loss statement, estimating

---

[3] In March 2018, Columbia Knoll settled with the defendants in the construction defect action, recovering a total of $400,000.  Houser Decl., Ex. CC.

the cost of repairs to the Property at more than $14 million.  Houser Decl., Ex. UU.  Great

American denied Columbia Knoll's claim.

In May 2018, Great American filed its complaint in this action, seeking declaratory relief.

In July 2018, Columbia Knoll filed its answer, asserting counterclaims against Great American

for breach of contract, breach of the implied covenant of good faith and fair dealing, and

violation of the Washington Consumer Protection Act.

Columbia Knoll also sought coverage under Philadelphia's policies.  Philadelphia denied

coverage.  In September 2018, Columbia Knoll filed a third-party complaint against

Philadelphia, asserting the claims it asserts as counterclaims against Great American.  ECF No.

14.

## LEGAL STANDARDS FOR SUMMARY JUDGMENT

The court must grant summary judgment if there are no genuine issues of material fact

and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  If the

moving party shows that there are no genuine issues of material fact, the nonmoving party must

go beyond the pleadings and designate facts showing an issue for trial.  *Celotex Corp. v. Catrett*,

477 U.S. 317, 322-23 (1986).  When parties file cross-motions for summary judgment, the court

considers "each motion on its merits."  *Am. Tower Corp. v. City of San Diego*, 763 F.3d 1035,

1043 (9th Cir. 2014).

## DISCUSSION

### I.  Choice of Law in Diversity Actions

"Federal courts sitting in diversity look to the law of the forum state . . . when making

choice of law determinations."  *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175 (9th Cir.

2014).  I therefore apply Oregon "choice of law rules  to determine the controlling substantive law."  *Patton v. Cox*, 276 F.3d 493, 495 (9th Cir. 2002).  "The threshold question in a choice-of-law problem is whether the laws of the different states actually conflict."  *Spirit Partners, LP v. Stoel Rives LLP*, 212 Or. App. 295, 301, 157 P.3d 1194, 1198 (2007).  "The proponent of applying a different state's law has the obligation to identify a material difference between Oregon law and the law of the other state."  *Portfolio Recovery Assocs., LLC v. Sanders*, 292 Or. App. 463, 468, 425 P.3d 455, 459 (2018) (citing *Spirit Partners*, 212 Or. App. at 301, 157 P.3d at 1198).  "Where no material difference exists between Oregon law and the law of the proposed alternative forum, Oregon courts will apply Oregon law without regard to the relative significance of the relationship between the dispute and the proposed alternative forum."  *Powell v. System Transp., Inc.*, 83 F. Supp. 3d 1016, 1022 (D. Or. 2015).  Because the "choice-of-law analysis is issue-specific," I address contract claims and non-contractual claims separately.  *See In re Helicopter Crash Near Weaverville, Cal.*, 714 F. Supp. 2d 1098, 1102 (D. Or. 2010).

## II.  Choice of Law for Breach of Contract Claims

### A.  There Is No Material Difference Between Oregon and Washington Law

The parties agree that the insurance policies at issue do not contain choice of law provisions.  In the absence of such provisions, the first issue is whether there is a material difference between Oregon and Washington law on breach of contract claims.  Columbia Knoll, as the party seeking application of Washington law, has the burden of showing a material difference.

Columbia Knoll contends there is a material difference in the two states' approaches to

construing ambiguous insurance policy provisions, asserting that "Washington allows resort to extrinsic evidence, while Oregon does not, instead construing any ambiguity that survives scrutiny against the insurer." Columbia Knoll's Reply 4. Columbia Knoll argues that if this court finds that a policy provision is ambiguous, "[t]he parties need to know whether such ambiguities will be resolved by use of extrinsic evidence or simply construed against the Insurers." Columbia Knoll's Reply 4. The Insurers respond that Oregon allows courts to consider extrinsic evidence when interpreting an ambiguous policy provision.

Both states allow courts to consider extrinsic evidence to determine the parties' intent when interpreting an ambiguous contract provision. As Magistrate Judge Hubel has explained:

> The court finds the Oregon and Washington approaches, though somewhat different, ultimately would reach similar results. In both states, the courts first will look to the language of the contract itself. Although, in Washington, the parties may offer extrinsic evidence to place the contract in context, and to assist the court in determining the meanings of particular words or phrases, such evidence is not accepted for purposes of contradicting the express language of the contract. The courts of both . . . states will examine extrinsic evidence of the parties' intent . . . to interpret an ambiguous contract provision. Thus, the court finds no material differences between the relevant laws of Oregon and Washington, and will apply Oregon law to interpret the subcontract between TBH and Wilson.

*U.S. ex rel. TBH & Assocs., LLC v. Wilson Constr. Co.*, 965 F. Supp. 2d 1215, 1220-21 (D. Or. 2013). Turning specifically to the interpretation of ambiguous insurance policy provisions, Washington treats insurance policies like other contracts, allowing courts construing ambiguous provisions to consider extrinsic evidence to determine the parties' intent, and if ambiguities still remain, then courts resolve the ambiguities "against the drafter-insurer and in favor of the insured." *Am. Nat'l Fire Ins. v. B & L Trucking and Constr. Co.*, 134 Wash. 2d 413, 428, 951 P.2d 250, 256 (1998).

As to Oregon law on this issue, Columbia Knoll has not cited any Oregon Supreme Court decision that categorically bars courts from considering extrinsic evidence when construing an ambiguous insurance policy provision. Columbia Knoll argues that *Hoffman Construction Co. v. Fred S. James & Co.*, 313 Or 464, 469, 836 P.2d 703, 706 (1992) (*Hoffman*), holds that "ambiguities that survive strict scrutiny are strictly construed against the insurer." Columbia Knoll's Resp. 6, ECF No. 40. In *Hoffman*, the court determined that the insurance policy provision at issue was not ambiguous, so the court did not need to address whether extrinsic evidence would be admissible. I agree with Magistrate Judge Stewart, who concluded after a thorough analysis that *Hoffman* does not bar Oregon courts from considering extrinsic evidence when construing ambiguous insurance policy provisions. *First Mercury Ins. Co. v. Waterside Condo. Ass'n*, No. 3:12-cv-02348-ST, 2013 WL 6383883, at *6 (D. Or. Dec. 5, 2013) ("A careful review of the Oregon case law and its application by this court support the conclusion that *Hoffman* does not always exclude extrinsic evidence.").[4]

In the absence of controlling decisions of the Oregon Supreme Court, I turn to decisions of the Oregon Court of Appeals. "[W]hen (1) a federal court is required to apply state law, and (2) there is no relevant precedent from the state's highest court, but (3) there *is* relevant precedent from the state's intermediate appellate court, the federal court must follow the state intermediate

---

[4] Judge Stewart noted,
In another case decided the same year as *Hoffman*, the Oregon Supreme Court reasoned that "[t]he parties presented no evidence, such as evidence of their negotiations, about what meaning they actually intended." *Joseph v. Utah Home Fire Ins. Co.*, 313 Or 323, 328, 835 P.2d 885, 887 (1992) (en banc ). Without overruling *Joseph*, *Hoffman* did not address the role of extrinsic evidence in its methodology. Instead it stated that "after all other methods for resolving the dispute over the meaning of particular words fail, then the rule of interpretation against the drafter . . . becomes applicable." *Hoffman*, 313 Or at 470-71, 836 P.2d at 706-07.
*First Mercury*, at *6.

appellate court decision unless the federal court finds convincing evidence that the state's supreme court likely would not follow it." *Ryman v. Sears, Roebuck & Co.*, 505 F.3d 993, 994 (9th Cir. 2007).

The post-*Hoffman* decisions of the Oregon Court of Appeals are not consistent on whether courts may consider extrinsic evidence when interpreting ambiguous insurance policy provisions. *Compare Prot. Mut. Ins. Co. v. Mitsubishi Silicon America Corp.*, 164 Or. App. 385, 398, 992 P.2d 479, 486 (1999) ("A court can consider such extrinsic evidence in interpreting an insurance contract only if it first finds the policy to be ambiguous.") (holding that trial court erred in considering extrinsic evidence because the commercial property policy at issue, although complicated and technical, was not ambiguous), *with Rhiner v. Red Shield Ins. Co.*, 228 Or. App. 588, 593, 208 P.3d 1043, 1045 (2009) ("the interpretation of an insurance policy is a question of law that is confined to the four corners of the policy without regard to extrinsic evidence"). The decisions of this court reflect the inconsistent Oregon appellate decisions. *Compare Wausau Bus. Ins. Co. v. Boyd Coffee Co.*, No. 3:12-cv-0968-HU, 2014 WL 897115, at *10 (D. Or. Mar. 3, 2014) (if the court "determines that the term is ambiguous, the court may then consider extrinsic evidence in interpreting the insurance contract"); *Alkemade v. Quoanta Indem. Co.*, No. 6:12-cv-00844-TC, 2013 WL 1500826, at *6 (D. Or. Jan. 8, 2013) (if "the court determines that the term is ambiguous, the court may then consider extrinsic evidence in interpreting the insurance contract"), *adopted*, 2013 WL 1500720 (D. Or. April 10, 2013), *with Alterra Am. Ins. Co. v. James W. Fowler Co.*, 347 F. Supp. 3d 604, 612 (D. Or. 2018) ("Oregon courts do not consider extrinsic evidence when interpreting insurance policy language. To Oregon courts, the interpretation of an insurance policy is a 'question of law that is confined to the four corners of

the policy without regard to extrinsic evidence.'") (quoting *Rhiner*, 228 Or. App. at 593, 208 P.3d at 1045); *cf. Factory Mut. Ins. Co. v. Peri Formworks Sys., Inc.*, 223 F. Supp. 3d 1133, 1144 (D. Or. 2016) (noting conflict in Oregon decisions but determining that "[t]he Court, however, need not decide whether it is appropriate under Oregon law to consider extrinsic evidence under the circumstances of this case").

I conclude that the Oregon appellate decisions that would allow courts to consider extrinsic evidence to interpret ambiguous insurance policy provisions are more consistent with Oregon contract law than those decisions that would appear to categorically exclude extrinsic evidence. As Judge Stewart explained, "In the majority of cases applying the maxim of construing ambiguous policy language against the drafter, the language at issue was non-negotiated, standard, and provided by the insurer. Thus, the courts construed the language against the insurer." *First Mercury*, 2013 WL 6383883, at *6. However, if a court is construing an ambiguous, non-standard policy provision that was negotiated by the insurer and the insured, "logic dictates that a court should consider whatever evidence of the parties' intent is available. After all, Oregon courts have stated that 'the rule of liberal construction in favor of the insured is subordinate to the rule that with insurance contracts, as with other contracts, the primary and governing consideration is to ascertain the intent of the parties.'" *Id.* at *7 (quoting *First Far W. Transp., Inc. v. Carolina Cas. Ins. Co.*, 47 Or. App. 339, 343, 614 P.2d 1187, 1190 (1980)). I conclude that Columbia Knoll has not carried its burden of showing a material difference between Oregon and Washington law on this issue.

Columbia Knoll also contends that Washington has "more" law than Oregon on claims for breach of commercial property insurance policies, and that "Washington courts [have] addressed

issues that the Oregon courts have yet to consider." Columbia Knoll's Reply 3, ECF No. 52. The existence of more law in Washington on a particular issue does not show a material difference with Oregon law. Because Columbia Knoll has failed to show a material difference in the two states' laws, I conclude that Oregon law applies to the contract issues.

**B. Assuming a Material Difference Exists, Oregon Law Applies**

Even assuming that material differences exist between the two states' laws, I conclude Oregon law applies to the contract claims. Because the insurance policies at issue do not contain choice of law provisions, I turn to Oregon's choice of law statutes. Under Or. Rev. Stat. § 15.360, "the rights and duties of the parties with regard to an issue in a contract are governed by the law, in light of the multistate elements of the contract, that is the most appropriate for a resolution of that issue." The court determines the most appropriate law by:

> (1) Identifying the states that have a relevant connection with the transaction or the parties, such as the place of negotiation, making, performance or subject matter of the contract, or the domicile, habitual residence or pertinent place of business of a party;
>
> (2) Identifying the policies underlying any apparently conflicting laws of these states that are relevant to the issue; and
>
> (3) Evaluating the relative strength and pertinence of these policies in:
>
> (a) Meeting the needs and giving effect to the policies of the interstate and international systems; and
>
> (b) Facilitating the planning of transactions, protecting a party from undue imposition by another party, giving effect to justified expectations of the parties concerning which state's law applies to the issue and minimizing adverse effects on strong legal policies of other states.

Or. Rev. Stat. § 15.360.

Columbia Knoll argues that because the place of negotiation and the making of the

insurance policies were in Washington, Washington law should apply.  Columbia Knoll also

argues "[w]hile the current dispute happens to involve property located in Oregon, the insurance

contracts themselves were overwhelmingly directed toward the State of Washington."  Columbia

Knoll's Resp. 9.

I agree with the Insurers, however, that the choice of law factors favor Oregon law.  The

place where the policies were negotiated and delivered has little relevance here because  the

insurance policies at issue appear to be standard forms.  On the other hand, the Property, which is

the focus of the parties' dispute, is in Oregon.  The Property's owner, Columbia Knoll, is based in

Oregon, and its business operations are in Oregon.  The place of performance is arguably Oregon,

which is "where payment under a policy would be made."  *Ingenco Holdings, LLC v. Ace Am.

Ins. Co.*, 921 F.3d 803, 810-11 (9th Cir. 2019).[5]  The existence of insured properties in other

states, with the majority of insured properties in Washington, does not favor Washington law

because this dispute concerns only Oregon property.  *See id.* at 811 (rejecting argument that court

should consider "a jurisdiction's relationship with a contract, rather than a specific property").

Columbia Knoll argues that its executives' Washington domicile favors application of

Washington law.  However, the Oregon choice of law statute looks to "the domicile, habitual

residence or pertinent place of business of a *party*," Or. Rev. Stat. § 15.360(1) (emphasis added),

and Columbia Knoll's executives are not parties to this action.  The location of Columbia Knoll's

executives is fortuitous, while the location of the Property is not.  *See* Great Am.'s Response 9-

---

[5] Although *Ingenco* applied Washington choice of law, which refers to the Restatement (Second)
of Conflict of Law § 188 for contract issues, the factors in section 188 are similar to the factors in Or.
Rev. Stat. § 15.360.  *See Ingenco*, 921 F.3d at 809-10 (under section 188, court looks to place of
contracting, place of negotiation, place of performance, location of subject matter of contract, and
residence, place of incorporation, and place of business of parties).

10.  Even if there were material differences between Oregon and Washington contract law, Oregon choice of law rules strongly favor application of Oregon law to the contract issues here.

## II.  Choice of Law for Non-Contractual Claims

The parties agree that there are material differences between Oregon and Washington law on non-contractual claims involving insurance policies.  Washington allows policyholders to bring claims against insurers under its Consumer Protection Act, while Oregon's Unfair Trade Practices Act specifically exempts insurers.  Columbia Knoll's Resp. 5, ECF No. 40.  Washington also allows tort claims against insurers for breach of the implied covenant of good faith and fair dealing, while Oregon does not recognize such tort claims under these alleged facts.  *Id.*  I turn to Oregon choice of law rules to determine whether Oregon or Washington law applies to the non-contractual claims.

### A.  Or. Rev. Stat. § 15.440

The Oregon statute governing choice of law for non-contractual claims, Or. Rev. Stat. § 15.440, provides in part:

> (3) If the injured person and the person whose conduct caused the injury were domiciled in different states and the laws of those states on the disputed issues would produce a different outcome, the law of the state designated in this subsection governs.
>
> (a) If both the injurious conduct and the resulting injury occurred in the same state, the law of that state governs if either the injured person or the person whose conduct caused the injury was domiciled in that state.
>
> (b) If both the injurious conduct and the resulting injury occurred in a state other than the state in which either the injured person or the person whose conduct caused the injury were domiciled, the law of the state of conduct and injury governs.  If a party demonstrates that, under the circumstances of the particular case, the application of that law to a disputed issue will not serve the objectives of that law, that issue will be governed by the law selected under ORS 15.445.

(c) If the injurious conduct occurred in one state and the resulting injury in another state, the law of the state of conduct governs. However, the law of the state of injury governs if:

(A) The activities of the person whose conduct caused the injury were such as to make foreseeable the occurrence of injury in that state; and

(B) The injured person formally requests the application of that state's law by a pleading or amended pleading. The request shall be deemed to encompass all claims and issues against that defendant.

Or. Rev. Stat. § 15.440(3). Under the Oregon choice of law statute, the court looks to (1) the domicile of the injured person; (2) the domicile of the person who conduct caused the injury; (3) the location of the injurious conduct; and (4) the location of the resulting injury. Here, I conclude that these factors favor applying Oregon law to the non-contractual claims.

Oregon is the domicile of Columbia Knoll, the injured person, because Oregon is "the state in which [Columbia Knoll] maintains its principal place of business." Or. Rev. Stat. § 15.420(2). Oregon has an interest in regulating insurance policies that cover property damage to Oregon property. This factor favors Oregon law.

The domiciles of the persons who allegedly injured Columbia Knoll, the Insurers, are Illinois and Pennsylvania. The location of the injurious conduct is Illinois and Pennsylvania, where the Insurers decided to deny Columbia Knoll's claimed loss, and to a lesser extent in Oregon, where the Insurers investigated the damage to the Property. These two factors favor neither Oregon nor Washington law.

The parties disagree on the fourth factor, the location of the resulting injury. Columbia Knoll contends that its executives, who are domiciled in Washington, have suffered the resulting injury in Washington. Columbia Knoll's executive Mark Miller states that he has "executed personal guaranties on at least three Columbia Knoll loans, with combined principal loan amounts

of approximately $4.9 million."  Miller Suppl. Decl. ¶ 4.  At an examination under oath in 2018,

Miller testified that if Columbia Knoll prevails on its claims in this action, he personally would

not benefit at all "because the property's debt encumbered, and it's not likely that I will see any

money ever over the life [*sic*] the project."  Houser 2d Decl., Ex. 4, at 20, ECF No. 48-1.  Miller

explained that "it's more than likely that all of the money for the foreseeable time would be

allocated to the debt of the project and to the limited partner."  *Id.*, at 21.  I conclude that the

location of Columbia Knoll's executives is not dispositive on this issue.  Instead, I agree with the

Insurers that the location of the injury is primarily if not exclusively in Oregon, where the

Property is located.  The State of Oregon and the City of Portland are creditors of Columbia

Knoll, and many low-income tenants in Oregon could be affected if Columbia Knoll is not able to

fully repair the alleged damage.  I conclude that Oregon's interest in this dispute is greater than

Washington's interest in protecting Columbia Knoll's executives from possible liability under

their personal guaranties.  Oregon law therefore applies to the non-contractual claims at issue.

Oregon does not recognize claims analogous to Columbia Knoll's non-contractual claims

for violation of Washington's Consumer Protection Act and for tortious breach of the covenant of

good faith and fair dealing.  Because Oregon law applies to Columbia Knoll's non-contractual

claims, I dismiss these claims.  *See Alterra Am. Ins.*, 347 F. Supp. 3d at  610 (dismissing similar

Washington law claims after concluding that Oregon law applied).

## CONCLUSION

Plaintiff and Third-Party Defendant Great American Alliance Insurance Co.'s Motion for

Summary Judgment, ECF No. 22, and Third-Party Defendant Philadelphia Indemnity Insurance

Co.'s Motion and Amended Motion for Summary Judgment, ECF Nos. 30 and 33, are

GRANTED as to application of Oregon law. Defendant and Third-Party Plaintiff SIR Columbia

Knoll Associates Limited Partnership's Cross-Motion for Partial Summary Judgment, ECF No.

44, is DENIED.

IT IS SO ORDERED.


Dated this 6th day of September, 2019.


Marco A. Hernandez
United States District Judge